# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 03 C 4916 |
| v. | ) | (98 CR 561-8) |
| | ) | |
| CALVIN TRENNELL | ) | Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

In 2000, petitioner Calvin Trennell was found guilty of conspiring to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841 and 846. The jury found specifically that Trennell had conspired to distribute more than five kilograms of cocaine and 50 grams of cocaine base, and this court imposed a guideline sentence of 360 months in prison followed by a five-year period of supervised release. The Seventh Circuit upheld the conviction and sentence on direct appeal. *United States v. Trennell*, 290 F.3d 881 (7th Cir.), *cert denied*, 537 U.S. 1014 (2002). On July 16, 2003, Trennell filed this *pro se* petition for habeas relief pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel at trial on five grounds. For the following reasons, the court concludes that all five grounds are without merit. Trennell's § 2255 petition is dismissed.

## BACKGROUND

In November 1998, a grand jury returned an indictment against Trennell and twelve other individuals, charging each of them with conspiring to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841 and 846.[1] The pre-*Apprendi* indictment referred to "wholesale quantities" of cocaine and cocaine base but did not charge specific quantities of each substance involved in the conspiracy. During the next thirteen months, each of Trennell's twelve

---

1   The indictment also alleged the use of a telephone in the commission of a felony.

co-defendants pleaded guilty to participating in the drug conspiracy. Trennell himself entered a plea of guilty to the conspiracy count on September 16, 1999, but later moved in December 1999 to withdraw his guilty plea, insisting in a colloquy with the district judge that he had a colorable "public authority" defense to the charges. Presiding Judge George M. Marovich cautioned against the decision but ultimately granted the motion and the matter was reassigned to this court for trial.[2]

On June 26, 2000, three days prior to Trennell's scheduled trial date, the Supreme Court announced its decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), holding that factors other than prior convictions, which increase a sentence beyond the statutory maximum, must be submitted to the jury and proven beyond a reasonable doubt. Because the indictment in Petitioner's case did not allege specific quantities of the illegal substances, the government suggested that it would seek a superseding indictment, one with specific quantities, to eliminate any potential *Apprendi* problems. Due to the potential scheduling problems of Trennell's counsel and the prosecutors, however, the government chose not to supersede and the trial commenced under the original indictment, with no objection from defense counsel.

At the conclusion of the trial, the government did submit instructions that required the jury to find beyond a reasonable doubt that the conspiracy involved a specific amount of cocaine and cocaine base. Consistent with those instructions, the government proposed a special verdict form which required the jury to find beyond a reasonable doubt what specific quantities of controlled substances were involved in the conspiracy. Trennell did not object to the jury instructions or the

---

[2] For a more complete discussion of the factual background, see *United States v. Trennell*, 290 F.3d 881 (7th Cir. 2002).

special verdict form. The jury found Trennell guilty of a conspiracy involving the distribution of cocaine and cocaine base in excess of, respectively, five kilograms and 50 grams.

In his § 2255 petition, Trennell raises five claims, each of them based on ineffective assistance of counsel. He argues specifically that his trial counsel was ineffective for: (1) failing to object to the absence of any specific drug quantity allegations in the indictment; (2) failing to object to the instruction informing the jury that it could convict Trennell under 21 U.S.C. § 841(b)(1)(A), which Trennell characterizes as an instruction that allowed the jury to convict on drug quantity determined by the court; (3) failing to object to the special verdict form presented to the jury; (4) possessing a conflict of interest at all stages of proceedings and on direct appeal; and (5) presenting a defense—i.e., "public authority" defense—that had no legal basis under the law and conducting what Trennell deems a "useless charade." (Petitioner's Memorandum of Law and Fact in Support of Motion Under 28 U.S.C. § 2255, at 10, hereinafter, "Pet. Memo".)

## DISCUSSION

### I. Legal Standard

A district court must grant a § 2255 motion to vacate, set aside, or correct a sentence when the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir.), *cert. denied*, 126 S. Ct. 422 (2005) (citations and quotations omitted). Because a § 2255 motion is not a substitute for a direct appeal, *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) (citing *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997)), the procedural default rule bars collateral review of any claim not raised on direct appeal, unless the petitioner can demonstrate cause

3

for the procedural default and actual prejudice from the failure to appeal, see *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir.), *cert. denied*, 126 S. Ct. (2005), or that enforcing the procedural default would result in a "fundamental miscarriage of justice." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Thus, a § 2255 motion cannot raise: "(1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; . . . and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds*, *Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994). The Seventh Circuit long has recognized that certain ineffective-assistance claims are exempt from this bar,[3] and the Supreme Court recently removed any remaining restraints. Specifically, the Court held in *Massaro v. United States*, 538 U.S. 500 (2003), that "ineffective-assistance claims should not be subject to 'the usual procedural default rule,' and held that 'an ineffective assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.'" *Fuller*, 398 F.3d at 648 (quoting *Massaro*, 538 U.S. at 504).

---

[3] *See, e.g., Galbraith v. United States*, 313 F.3d 1001, 1007 (7th Cir. 2002) (noting that ineffective assistance of counsel claims not raised on direct appeal are subject to the same procedural default rules, but also noting that the Seventh Circuit had stated that "it is generally proper to raise arguments of ineffective assistance of counsel for the first time on collateral review in a § 2255 petition because such claims usually . . . involve evidence outside the record." (citation omitted)). *See also Fuller v. United States*, 398 F.3d 644, 648-49 (7th Cir. 2005) (discussing the law in the Seventh Circuit prior to *Massaro*, and noting that ineffective assistance of counsel claims were subject to the same procedural default rules as other issues, and could not be raised for the first time in a § 2255 proceeding absent cause and prejudice; accordingly, if a petitioner claimed ineffective assistance of trial counsel, and such a claim was fully presented in the trial record, the petitioner was required to raise the issue on direct appeal or risk procedural default).

In order to constitute constitutionally ineffective assistance of counsel, the habeas petitioner must demonstrate that (1) his attorney's performance "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. The court strongly presumes that counsel's performance was effective. United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995). Concerning the first prong, the petitioner must point to specific acts or omissions in which counsel was deficient. Fountain, 211 F.3d at 434. Regarding the prejudice component of the Strickland test, there must be a showing of a reasonable probability that, but for defense counsel's errors, the result of the proceedings would have been different. Id. Mere "conclusory allegations" of poor performance do not satisfy this requirement. United States v. Farr, 297 F.3d 651, 658 (7th Cir. 2002). A court is not obligated to address both prongs of the Strickland test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong. United States v. Fudge, 325 F.3d 910, 924 (7th Cir. 2003) (citing Matheney v. Anderson, 253 F.3d 1025, 1042 (7th Cir. 2001)).

When a petitioner requests an evidentiary hearing pursuant to a § 2255 motion, the hearing will be granted only if the petitioner has adequately alleged "facts that, if proven would entitle him to relief." Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002) (quoting Stoia v. United States, 22 F.3d 766, 768 (7th Cir. 1994)). "[T]o allow indiscriminate hearings in federal post-conviction proceedings would eliminate the chief virtues of the justice system—speed, economy and finality." United States v. Delgado, 936 F.2d 303, 309 (7th Cir. 1991) (citation omitted).

## II. The Three *Apprendi*-Related Claims

Trennell argues that counsel was ineffective for failure to object to certain matters relating to the drug quantify findings: (1) the failure of the indictment to charge a specific drug quantity; (2) the instruction directing the jury to make findings concerning drug quantities; and (3) the court's use of a special verdict form that specifically called for such findings. Notably, counsel did raise each of these three *Apprendi*-related claims on direct appeal, and the Seventh Circuit rejected each of them.[4] On appeal Trennell argued specifically that "because the indictment failed to specify a drug quantity, but the jury instructions and verdict form included a drug quantity, his indictment was constructively amended in violation of the Fifth Amendment" and the "failure of the government to include specific quantities in the indictment violate[d] *Apprendi*." *Trennell*, 290 F.3d at 886. He now attempts to repackage those same claims—ordinarily barred by the Seventh Circuit's previous disposition—as "ineffective assistance of counsel" arguments.

Trennell's *Apprendi*-related claims fare no better under the "ineffective assistance" rubric. As the Seventh Circuit explained on his direct appeal, *Apprendi* stands for the proposition that "factors, other than prior convictions, which increase a sentence beyond the statutory maximum must be submitted to the jury and proven beyond a reasonable doubt." *Id.* at 884 (citing *Apprendi*,

---

[4] Had Trennell's § 2255 motion been filed recently, Trennell might assert *United States v. Booker*, 125 S.Ct. 738 (2005), as grounds for relief. The Seventh Circuit has held, however, that "*Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005." *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005). Trennell's judgment became final when the Supreme Court denied his petition for certiorari on November 4, 2002. *Trennell v. United States*, 537 U.S. 1014 (2002). Thus, because *Booker*, like *Apprendi*, does not apply retroactively to criminal cases on collateral review, *Booker* does not apply to this case and cannot serve as the basis for relief under § 2255. *See also United States v. Paladino*, 401 F.3d 471, 481 (7th Cir.), *cert. denied*, 126 S. Ct. 106 (2005).

530 U.S. 466). With respect to Trennell's claim on direct appeal of constructive amendment to the indictment, the Seventh Circuit observed that "not every variation from the terms of the indictment materially changes the indictment." *Trennell*, 290 F.3d at 888 (citing *United States v. Baker*, 227 F.3d 955, 960 (7th Cir. 2000)). In order to constitute a constructive amendment, "the change must establish offenses different from or in addition to those charged by the grand jury." *Trennell*, 290 F.3d at 888 (citing *United States v. Pigee*, 197 F.3d 879, 886 (7th Cir. 1999)). A "'variance between the broad allegations of an indictment and the narrower proof at trial' is acceptable so long as 'the offense proved was fully contained within the indictment.'" *Trennell*, 290 F.3d at 889 (quoting *United States v. Miller*, 471 U.S. 130, 137 (1985)). The language of Trennell's indictment (charging him with conspiring to distribute to possess with intent to distribute quantities of mixtures containing cocaine and cocaine base) was "broad enough to include the quantity of drugs for which Trennell was convicted, namely 5 kilograms of cocaine and 50 grams of cocaine base." *Trennell*, 290 F.3d at 889. The Seventh Circuit concluded that "[b]ecause the proof at trial was fully contained in the indictment, and the jury instructions were narrower than the indictment, Trennell's claim that the indictment was constructively amended fails." *Id.* In light of the Seventh Circuit's analysis of this issue, the court concludes that Trennell's trial counsel was not ineffective in not objecting to the indictment on grounds of *Apprendi*.

The Seventh Circuit's analysis makes clear that counsel's failure to assert an *Apprendi* objection made no difference: The court observed that the absence of a specific drug quantity in the indictment or even the charge to the jury is harmless "if it is clear beyond a reasonable doubt that a properly instructed jury would have found Trennell guilty of conspiring to possess with intent to distribute [the specific drug quantities at issue]." *Id.* at 890 (citations omitted). In Trennell's case,

7

there is no cause for concern: "[E]ven if an *Apprendi* error occurred by failing to allege drug quantity in the indictment, it was harmless because the trier of fact did in fact determine drug quantity beyond a reasonable doubt." *Id.* (citing *United States v. Mechanik*, 475 U.S. 66, 72-73 (1986)).[5]

The fact that the jury was instructed to make such findings is the basis of Trennell's second ineffective assistance claim. He contends counsel should have objected to the instruction directing the jury to make findings under 21 U.S.C. § 841(b)(1)(A), the provision that establishes the penalties for particular quantities of narcotics. Trennell notes that the penalty provision was not specifically cited in the indictment, and argues, elliptically, that giving such an instruction invited the jury to convict him on a drug quantity "determined by the court." (Pet. Memo, at 6.)

Trennell is correct that failure to object to erroneous jury instructions may constitute ineffective assistance of counsel. *See, e.g., Lucas v. O'Dea*, 179 F.3d 412, 417 (6th Cir. 1999) (holding that a jury instruction permitting conviction for wanton murder where indictment charged intentional murder constituted a constructive amendment, and that counsel was ineffective in failing to object to this "constitutionally impermissible" variance between the instruction and indictment); *Gray v. Lynn*, 6 F.3d 265, 269 (5th Cir. 1993) (holding that counsel's failure to object to jury instruction that defendant "could be found guilty of attempted murder if he had *either* the intent to kill *or the intent to inflict great bodily harm*" rather than requiring the specific intent to kill, constituted ineffective assistance). Because Trennell did not object to the jury instruction concerning drug

---

[5] *See also United States v. Clark*, 112 Fed. Appx. 481, 484-85 (6th Cir. 2004) (claim that "the indictment is constitutionally defective because it fails to state an essential element of the charge—the quantity of drugs attributed to him—is without merit" because the sentence "was based on a jury's finding beyond a reasonable doubt that he was carrying" a specific amount) (judgment vacated by Supreme Court, *Clark v. United States*, 125 S.Ct. 2553 (2005), and case remanded to United States Court of Appeals for the Sixth Circuit for further consideration in light of *Booker*).

8

quantity during trial, the Seventh Circuit reviewed for plain error. *Trennell*, 290 F.3d at 886 (citations omitted). Under that standard, a court will not reverse a decision "unless the defendant demonstrates that (1) there was error; (2) the error was plain; (3) the error affected the defendant's substantial rights." *Id.* at 887 (citing FED. R. CRIM. P. 52(b); *United States v. Olano*, 507 U.S. 725, 732-35 (1993)).

On direct appeal, the Seventh Circuit concluded that because "[t]he indictment put Trennell on notice that evidence of quantities, and specifically, wholesale quantities of cocaine and cocaine base, would be introduced in the government's case . . . the court did not commit plain error by including specific quantities of drugs in the jury instructions and verdict form." *Trennell*, 290 F.3d at 889. Moreover, as noted earlier, the jury instructions "were narrower than the indictment," and therefore not prejudicial. *Id.* In fact, in this case, tried just three days after *Apprendi*, the trial court might have erred by *not* including specific quantities in the instructions and verdict form. The Seventh Circuit noted, "[w]e have instructed prosecutors in the past, and reiterate the position here, that post-*Apprendi* indictments should specify, and the trier of fact must be instructed to find, both the elements of the offense, as listed in § 841(a), and the drug amounts listed in § 841(b) that the prosecutor relies on to establish the maximum sentence." *Id.* at 887. In light of the Seventh Circuit's conclusion that the jury was properly instructed to make drug quantity findings, counsel's failure to object to these instructions does not constitute ineffective assistance.

Trennell's third ineffective assistance argument is another version of the second. He challenges his attorney's failure to object to the special verdict form, which directed the jurors to choose among several specific amounts involved in the drug conspiracy, ranging from less than 500 grams of cocaine to more than five kilograms of cocaine and 50 grams of cocaine base. *Id.* at 888.

9

This issue too was raised and directly addressed by the Seventh Circuit, which dismissed Trennell's challenge to the verdict form. The Court of Appeals concluded that the specific quantities set out on the special verdict form were within the parameters of the broad language of the indictment in which Trennell was charged with trafficking "wholesale quantities." *Id.* at 889. As the Seventh Circuit has recently explained, *Apprendi* requires a showing "that the drug type and amount sufficient to trigger the higher statutory maximums were found by the jury beyond a reasonable doubt." *United States v. Macedo*, 406 F.3d 778, 786 (7th Cir. 2005). Trennell's counsel was not ineffective for not objecting to the special verdict form; indeed, that form was necessary in order to satisfy the requirements of *Apprendi*.

Regarding all three *Apprendi*-related claims, they also fail because Trennell suffered no prejudice as a result of his counsel's failure to object to the indictment, jury instruction, or special verdict form. Even on *de novo* review, the court would have considered whether the error, if any, was harmless—the same standard applied on direct appeal to Trennell's arguments regarding *Apprendi*. With respect to the alleged inadequacy of the indictment, the Seventh Circuit found that any alleged error was harmless because the jury had been properly instructed to find guilty beyond a reasonable doubt as to specific drug quantities and the jury had properly indicated its findings on the special verdict form. *Trennell*, 290 F.3d at 890. Consequently, even if Trennell had demonstrated that his counsel was constitutionally ineffective, he has not shown that such ineffective assistance unfairly prejudiced his defense pursuant to the second prong of the *Strickland* test.

In his § 2255 motion, Trennell briefly cites *United States v. Cotton*, 535 U.S. 625 (2002), but that case does not support his claims here. In affirming Trennell's conviction on direct appeal, the Seventh Circuit explicitly declined to follow the Fourth Circuit's opinion in that case; specifically,

10

the Fourth Circuit had concluded "that it was plain error to impose a sentence of more than 20 years on defendants indicted and convicted for conspiracy to distribute cocaine hydrochloride and cocaine base when neither the indictment *nor the verdict* included specific drug amounts." *Trennell*, 290 F.3d at 887 n.3, *United States v. Cotton*, 261 F.3d 397, 404-07 (4th Cir. Cir. 2001) (emphasis supplied). On direct appeal in this case, the Seventh Circuit pointed out that in neither *Cotton* nor the similar Fifth Circuit case *United States v. Gonzalez*, 259 F.3d 355 (5th Cir. 2001) was the issue of drug quantity submitted to a jury and found beyond a reasonable doubt. *Trennell*, 290 F.3d at 887, n.3. In any event, subsequent to *Trennell*, the Supreme Court reversed the Fourth Circuit and held that defects in the indictment are not jurisdictional, and thus, do not deprive the court of its jurisdiction to hear the case. *Cotton*, 535 U.S. at 630-31. Whatever the merits of the Fourth Circuit's holding, the Supreme Court's decision makes clear that Trennell has no valid *Apprendi* argument.

### III. The Conflict of Interest Argument

Trennell also claims that his defense counsel rendered ineffective assistance due to a conflict of interest arising from scheduling problems. He asserts that his attorney's "representation of parties in other cases and matters were in direct conflict with his representation of Trennell's interests to a fair trial," and contributed to counsel's failure to object to alleged errors in the indictment. (Pet. Memo, at 5.) This "conflict" allegedly arose from defense counsel's representation of multiple clients, wholly unrelated to Trennell's case. Trennell did not raise the purported conflict at trial, and the court was under no obligation to inquire into the matter without specific knowledge of a conflict. *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980) ("Unless the trial court knows or reasonably should know that a particular conflict exists, the court need nor initiate an inquiry."); *Holleman v. Cotton*, 301 F.3d 737, 742 (7th Cir. 2002) ("Under *Holloway* and *Cuyler*, a trial court has the duty to inquire

11

adequately into a trial counsel's conflict of interest if it knows or reasonably should know that a particular conflict exists.").

To support his claim for relief, Trennell must establish "that an actual conflict of interest adversely affected his attorney's performance." United States v. Fuller, 312 F.3d 287, 291 (7th Cir. 2002) (citing Mickens v. Taylor, 535 U.S. 162, 174 (2002)). A "*potential* conflict of interest, no matter how it is addressed by the trial judge, is now insufficient to warrant relief." Fuller, 312 F.3d at 291-92 (citing Mickens, 535 U.S. at 171). Trennell identifies no actual conflict here. As the Fuller court explained, such a conflict exits "when an attorney actively represents incompatible interests; it is more than a 'mere theoretical division of loyalties.'" 312 F.3d at 291 (quoting Mickens, 535 U.S. at 171); see also Gray-Bey v. United States, 156 F.3d 773, 738 (7th Cir. 1998) (quoting Cuyler v. Sullivan, 446 U.S. at 348) ("In order for a defendant to establish that he was denied effective assistance of counsel, he must demonstrate how an alleged 'conflict of interest adversely affected his lawyer's performance.'") Unsubstantiated and conclusory statements are insufficient for this purpose. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

Trennell's reference to scheduling concerns raised by defense counsel during a brief pretrial exchange with the court does not demonstrate any actual conflict.[6] Nor is the court moved by

---

[6]     Prompted by *Apprendi*, the prosecutor considered seeking a superseding indictment, but Trennell's attorney resisted any delay in proceeding to trial:

| | |
|---|---|
| Defense Counsel: | We don't want to lose this date any more than the government does because, quite frankly, if we don't go soon, then we are going to have horrible scheduling problems. |
| The Court: | Sure. |
| Defense Counsel: | That's not what Mr. Trennell wants. (Government's Response to Defendant Calvin Trennell's Motion Pursuant to Section 2255, hereinafter, "Gov. Resp.", Ex. B at 6.) |

12

Trennell's allegation that his attorney told him that his trial "must continue as scheduled because [defense counsel] stood to loose [sic] too much in other cases and matters if Trennell's trial was rescheduled to a date that would interfere with other cases and matters he was representing." (Pet. Memo, at 5.) Defense counsel's busy schedule does not create an actual conflict of interest. Lawyers do have a responsibility not to take on more work than they can handle effectively, but busy lawyers are not, by definition, incapable of presenting adequate defenses. In fact,

> [i]t is almost routine for lawyers to have difficult schedules. A claimed hectic schedule, however, does not automatically mean that the attorney was not prepared and did not provide competent legal representation. "All attorneys must make decisions about how to allocate their scarce lawyerly resources among the many clients they may represent at any given time. Evaluating decisions is not within the province of this court. We ask only whether [the lawyer involved] performed adequately in *this* case."

United States v. Herrera-Rivera, 25 F.3d 491, 496 (7th Cir. 1994) (quoting United States v. Flores, 5 F.3d 1070, 1080 (7th Cir. 1993)). The Second Circuit has also considered this issue. Where defense counsel was allegedly under "enormous time constraints in regard to prior trial commitments," the court observed:

> In order to classify this kind of conflict as a *per se* sixth amendment violation, we would have to conclude that virtually all busy defense attorneys, who may consider limitations on their own time when scheduling matters before the courts, or who have more than one client and schedule matters based on clients' needs, are inherently incapable of providing an adequate defense that would satisfy the requirements of the sixth amendment. That, we are not prepared to do.

United States v. Zackson, 6 F.3d 911, 921 (2nd Cir. 1993).

Trennell has not explained how his defense counsel's other representations conflicted with or prevented an adequate defense. Nothing in the record suggests that defense counsel was unprepared for any stage of the proceedings, including trial. Even if Trennell could establish that

13

his trial counsel possessed a conflict of interest during the proceedings, Trennell "cannot demonstrate that doing so adversely affected counsel's performance." *Fuller*, 312 F.3d at 292 (citing *Mickens*, 535 U.S. at 171). In sum, Trennell's claim of ineffective assistance resulting from trial counsel's alleged conflict of interest fails.

## IV. The "Public Authority" Argument

At trial, Trennell pursued a "public authority" defense. Such a defense, sometimes characterized as "entrapment by estoppel," is available "to those defendants proving that a government official, acting with actual or apparent authority, affirmatively assured or actively misled the defendant into a reasonable belief that certain conduct was legal." *United States v. Fish*, 388 F.3d 284, 286 (7th Cir. 2004) (citing *United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996), *judgment vacated, and case remanded*, 125 S. Ct. 1678 (2005) (reversed on *Booker* grounds)). Trennell now claims that this line of argument was a mistake. He contends that his counsel "was ineffective for presenting a defense that had no legal basis under the law and conducting a useless charade." (Pet. Memo, at 10.) According to Trennell, had counsel "conducted adequate investigation and pretrial preparation he would have known that the Public Authority defense he was going to present on Trennell's behalf was a useless charade and would fail." (Pet. Memo, at 11 (improper quotation marks deleted).) Trennell claims that defense counsel pursued this line of defense contrary to the judgment of the prosecution and the court. (Pet. Memo, at 11 ("Over the concerns o [sic] the court and prosecution [trial counsel] persisted in presenting a defense he knew there was no basis under the law for.").)

This argument rings with irony. In fact, on multiple occasions before trial, Judge Marovich himself discussed this matter directly with Trennell, cautioning about the risk of proceeding with the

14

public authority defense.[7] Trennell, himself insisted on proceeding under that theory. Indeed, Trennell appears to acknowledge that the "public authority" theory was his own but contends it was his attorney's duty to advise him it would not succeed. (Pet. Memo, at 11.) Trennell correctly asserts that "[c]ounsel has a duty to advise the client of the facts and applicable law necessary to make an informed decision on whether to go to trial," *Odanuyi v. Scott*, 41 Fed. Appx. 854, 863 (7th Cir. 2002), but Trennell furnishes neither an affidavit nor any other evidence as to defense counsel's communications to Trennell concerning Trennell's chances of winning at trial. The Constitution "does not guarantee success or entitle defendants to the best available counsel or the most prudent strategies," *Kokoraleis v. Gilmore*, 131 F.3d 692, 696 (7th Cir. 1997) (citing *Strickland*, 466 U.S. 668), but is instead "satisfied when the lawyer chooses a professionally competent strategy that secures for the accused the benefit of an adversarial trial." *Kokoraleis*, 131 F.3d at 696 (citations omitted). Simply put, the Sixth Amendment ensures fairness through adversarial trials but does not mandate against strategies that ultimately fail. As in *Kokoraleis*, where defendant's trial counsel pursued a denial defense in accordance with his client's insistence and testimony (even though appellate counsel later argued that other defenses such as diminished-mental-capacity or undue-influence defenses would have been more adequate), Trennell's counsel defended his client in the manner his client wished to be defended.[8]

---

[7] "[I said] if this [public authority defense] is a viable defense you get to go home, and you, Calvin, more than anybody in the world know whether it's viable or not… [but] If you went to trial and if your [public authority] defense was rejected … we go[] into a [sentence] range … up to 30 years." (Gov. Resp., Ex. A at 9.)

[8] *See Kokoraleis v. Gilmore*, 131 F.3d 692, 697 (7th Cir. 1997) ("[The defendant] insisted that he did not commit a crime. What competent lawyer labels his own client a serial
(continued...)

Even if Trennell's counsel encouraged reliance on the "public authority" defense in this case, counsel's decision to "allow or encourage[d] [defendant] to take the stand and admit certain elements of the crime charged is not objectively unreasonable" because it "was a tactical decision and trial counsel is free to make objectively reasonable tactical decisions." *Agunloye v. United States*, 999 F. Supp. 1182, 1187 (N.D. Ill.1998). *Cf. United States v. Tardieff*, 83 F.3d 424, 1996 WL 190820, at *3 (7th Cir. Apr. 17, 1996) (unpublished order) ("Failure to pursue a weak entrapment defense is not ineffective assistance."). Tactical decisions at trial are accorded "enormous deference," *United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993), and will not amount to ineffective assistance if, "viewed from counsel's perspective at the time, [they] might be considered sound trial strategy." *Kubat v. Thieret*, 867 F.2d 351, 360 (7th Cir.), *cert. denied*, 493 U.S. 874 (1989).

Trennell was made aware of the consequences of presenting the public authority defense, and "[w]here a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel." *United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989). He cannot now claim ineffective assistance of counsel because the defense failed.[9]

---

[8](...continued)
murderer and undertakes a defense at war with the defendant's protestations of innocence? ... A reasoned decision to make the best of a bad situation by pursuing a particular line of defense satisfies the constitutional minimum.")

[9] Although the jury was not persuaded by Trennell's "public authority" theory, Trennell did offer some evidence in support of it. Trennell testified that his cousin, who was working as a confidential informant for the Drug Enforcement Agency ("DEA"), made statements that led Trennell to believe that he had been recruited and was working for the DEA at the time of his criminal activity. Trennell himself knew of evidence inconsistent with that defense, including evidence that Trennell threw $20,000 in cash out of his car window while being pursued by police
(continued...)

Trennell's assertion that had counsel so advised him, he would have pleaded guilty rings hollow on the record. There is simply no credible basis to conclude that counsel did not warn Trennell about the dubious merit of the public authority defense or, if he did not, that Trennell would have reacted differently if counsel had. To the contrary, if Trennell's counsel had failed to pursue the theory, this court is confident that Trennell would now argue that his counsel was ineffective for not discussing the defense and subsequently presenting it.[10]

V.  **Request for an Evidentiary Hearing**

Trennell requests an evidentiary hearing but does not fully explain how it is necessary to his claims. Evidentiary hearings are not required if the § 2255 "motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001). In this case, the record conclusively shows that Trennell is entitled to no relief under his § 2255 motion. Furthermore, Trennell failed to submit a sworn affidavit indicating what specific facts support his assertions. Absent such an affidavit, which

---

[9](...continued)
just before his arrest, Trennell, 290 F.3d at 884-885, and the fact that Trennell first spoke to his DEA informant cousin about working for the DEA after Trennell's drug transaction and subsequent police chase. Trial Transcript at 555-56, 567-68.

[10] See, e.g., Acevedo-Carmona v. Walter, 170 F. Supp. 2d 820, 824 (N.D. Ill.2001), where petitioner claimed his counsel was ineffective "for advising[] that [defendant] had no chance for an acquittal by presenting the affirmative defense of entrapment." The petitioner claimed that if he had full and accurate information, he would have insisted on proceeding to trial under the defense of entrapment. "Where the alleged error in a claim of ineffective assistance of counsel during the plea process is the 'failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.'" Id. (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

is a threshold to granting an evidentiary hearing, see, e.g., Galbraith, 313 F.3d at 1009, Trennell's request for an evidentiary hearing is therefore denied.

## CONCLUSION

For the foregoing reasons, the court denies in its entirety Trennell's petition for relief under 28 U.S.C. § 2255.

ENTER:

Dated: November 29, 2005

REBECCA R. PALLMEYER
United States District Judge